**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUIS MANUEL MORA, INDIVIDUALLY AND ON BEHALF OF THE CLASS,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY-DAVIDSON CREDIT CORP., A CORPORATION, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | 1:08-cv-01453 OWW GSA<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND (DOC. 11) |

**I. INTRODUCTION.**

Plaintiff Luis Manuel Mora ("Mora") filed this class action lawsuit against Defendant Harley-Davidson Credit Corporation ("HDCC") in the Superior Court of the State of California, County of Merced, on August 19, 2008. Plaintiff alleges HDCC violated California's Rees-Levering Automobile Sales Finance Act ("ASFA"), California Civil Code § 2981 et seq., and Unfair Competition Law, California Business and Professions Code § 17200 et seq., when it sent customers notices of its intent to dispose of repossessed vehicles that were defective under California law and attempted to collect deficiencies from debtors that were legally prohibited

1

because HDCC failed to strictly comply with ASFA's notice provisions.  On September 26, 2008, Defendant HDCC filed a notice of removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and the Class Action Fairness Act of 2005 ("CAFA").

Before the court for decision is Plaintiff's motion to remand this action to state court on the ground that subject matter jurisdiction is lacking because HDCC cannot establish that the amount in controversy as to the class exceeds $5 million as required by 28 U.S.C. § 1332(d)(2).  Defendant opposes, arguing that the amount in controversy exceeds $5 million because Plaintiff seeks to enjoin HDCC from collecting over $20 million in deficiencies remaining on California accounts after sales of repossessed motorcycles.

## II. BACKGROUND.

Plaintiff entered into a conditional sales contract to purchase a new 2006 Harley-Davidson motorcycle with financing arranged through Defendant HDCC.  As a financed sale of a motor vehicle, Plaintiff asserts this transaction is controlled exclusively in California by ASFA.  The selling dealer sold and assigned its interest in the sales contract to lienholder HDCC. Plaintiff contends that the motorcycle was plagued by defects that the dealer was unable to repair after numerous attempts.  He voluntarily surrendered it to HDCC in August 2007.

Plaintiff alleges that on September 4, 2007, HDCC sent Plaintiff a notice of intent to dispose of a repossesed vehicle that failed to comply with ASFA and applicable provisions of the California Commercial Code.  Plaintiff argues that, under ASFA,

2

if a lender fails to give a legally compliant notice before it sells or disposes of a repossessed or surrendered vehicle, it loses its right to any deficiency owed from the buyer and is prohibited from claiming or asserting any deficiency. Accordingly, Plaintiff claims HDCC has no legal right to attempt to collect any claimed deficiency from him and a purported class of similarly situated former owners of Harley-Davidson motorcycles financed by HDCC.  HDCC has both attempted to collect and successfully collected a claimed deficiency from Plaintiff.

Plaintiff seeks to represent a class of "all persons from whom HDCC and its associates, affiliates, and subsidiaries claims it is owed a deficiency that was invalid due to HDCC's defective NOTICE(S) and its failure to comply with the notice requirements of Rees-Levering." (Doc. 1-2, Complaint at 8.)  Plaintiff asserts that the allegedly defective notice he received is a standard notice HDCC sends as a matter of common business practice to persons claimed to be liable to HDCC under its conditional sales contract covering HDCC repossessed vehicles. (*Id.* at 7.)  Plaintiff asserts that, at least four years prior to the date of his complaint, HDCC has regularly collected and attempted to collect deficiencies from proposed class members in violation of ASFA.  (*Id.*)  Plaintiff is "unable to state the precise number of potential members of the proposed class because that information is in the sole possession of HDCC."  (*Id.* at 8.) Plaintiff believes the size of the proposed class is "at least in the hundreds."  (*Id.*)

Plaintiff seeks: 1) a declaration that HDCC did not comply with AFSA and has no right to assert any deficiency claim against

3

any class member, 2) damages in the form of recovery for all class members of payments made to HDCC on the deficiency claims, compensation for damage to the credit records of class members, and actual damages, 3) an injunction prohibiting HDCC from future collection efforts and forcing it to disgorge profits, 4) to set aside judgments HDCC successfully sought and obtained against class members who it claimed owed a deficiency, and 5) attorney's fees.

### III. LEGAL STANDARD.

A district court may remand to state court a case that has been removed to the district court if at any time it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). A motion to remand on the basis of any defect in the removal procedure must be made within 30 days of the filing of the notice of removal. *Id*. Where a motion for remand is not made within 30 days of removal of the case to the district court, the court must remand the case to state court *sua sponte* when federal subject matter jurisdiction is lacking. A federal court must determine its own jurisdiction even if the parties fail to raise the issue. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990).

Federal courts construe removal statutes strictly to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). Removal is generally proper when the district courts have original jurisdiction over the action. *See* 28 U.S.C. § 1441; *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

Jurisdiction must be determined from the face of the complaint, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), and it must be clear from the face of the complaint under the well-pleaded complaint rule that federal subject matter jurisdiction exists. *Oklahoma Tax Comm'n. v. Graham*, 489 U.S. 838, 840-41 (1989) (per curiam).

### IV. DISCUSSION.

A civil action in state court may be removed to federal district court if the district court has "original jurisdiction" over the matter. 28 U.S.C. § 1441(a). As amended by the CAFA, 28 U.S.C. § 1332(d) vests district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and in which the aggregate number of proposed plaintiffs is 100 or greater and any member of the plaintiff class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005). With respect to these class action suits, the CAFA amended 28 U.S.C. § 1332 to require aggregation of class members' claims to determine whether the amount in controversy exceeds $5 million. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

The issues of minimal diversity and class numerosity are not in dispute in this motion. Plaintiff is a citizen of California and Defendant is a citizen of Nevada and Illinois, so minimal diversity exists. Plaintiff asserts that the class size is "at least in the hundreds," satisfying class numerosity. (Complaint

5

at 8.)

The issue in dispute is the amount in controversy. Plaintiff argues that HDCC's calculated estimate of the amount in controversy is incorrect because it includes all deficiencies HDCC claims over a four year period. Plaintiff contends that the only relevant category for purposes of calculating the amount in controversy is HDCC's actual collections on the allegedly invalid deficiency claims, not including uncollected deficiencies. Plaintiff claims including uncollected deficiencies in the amount in controversy is improper because HDCC has no legally protected interest in such debt, as HDCC's collection efforts are invalid under California law. *See* Cal. Civil Code § 2983.2(a) (a borrower "shall be liable for any deficiency after disposition of the repossessed or surrendered motor vehicle only if the notice prescribed by this section is given within 60 days of repossession or surrender and does all of the following: [listing requirements]"); *Bank of America v. Lallana*, 19 Cal.4th 203, 215 (1998) ("If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment."). This is inaccurate as the avoidance of an alleged debt puts each amount in controversy.

In cases removed from state court, the removing defendant has "always" borne the burden of establishing federal jurisdiction, including any applicable amount in controversy. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Sanchez*

*v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under the CAFA, the burden of establishing removal jurisdiction remains on the removing defendant. *Abrego Abrego,* 443 F.3d at 685. The Ninth Circuit applies *Sanchez's* preponderance of the evidence test to complaints filed under the CAFA that do not specify a particular amount in controversy. *Abrego Abrego*, 443 F.3d at 683; *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Under this test, the defendant must provide evidence that it is "more likely than not" that the amount in controversy requirement is met. *Sanchez,* 102 F.3d at 404.

*Singer* explained what may be considered by the district court in determining the amount in controversy on removal:

> The district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

*Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). A defendant's opposition to a motion to remand and later-filed affidavits are properly construed as an amendment to the notice of removal and may be considered in determining the amount in controversy. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002).

Here it is not apparent from the face of the complaint that the jurisdictional amount is in controversy. Plaintiff seeks,

among other things, actual damages, restitution, and an injunction requiring HDCC to disgorge all profits and prohibiting it from collecting any purportedly invalid deficiency amounts. Plaintiff's complaint does not detail the specific amount of damages sought, the value of the profits he seeks to have disgorged, or the deficiency amounts he claims are invalid.  In his prayer for relief, Plaintiff seeks:

> 1. An order certifying this action as a class action;
>
> 2. A determination that the forms of NOTICE that were used by HDCC and its associates, affiliates, and subsidiaries in California during the relevant period did not comply with requirements of ASFA and the Cal. Commercial Code, and that, as a consequence, HDCC and its associates, affiliates, and subsidiaries lost their right to assert any deficiency claim against any of the persons to whom HDCC sent such NOTICE(S);
>
> 3. Restitution of all money paid at any time during the relevant period by class members to HDCC and its associates, affiliates, and subsidiaries on invalid deficiency claims, together with interest and/or profits thereon;
>
> 4. Disgorgement of all profits made by HDCC and its associates, affiliates, and subsidiaries on the funds it collected on invalid deficiency claims during the relevant period;
>
> 6. The distribution of any unclaimed funds that are disgorged by HDCC and its associates, affiliates, and subsidiaries pursuant to a cy pres fund or fluid recovery remedy;
>
> 7. An injunction prohibiting HDCC, its associates, affiliates, and subsidiaries, and its agents from claiming, collecting or attempting to collect on any invalid deficiency claims and setting aside or vacating any judgments that HDCC may have obtained on such claims in judicial proceedings;
>
> 8. Actual damages;
>
> 9. Attorneys fees and costs; and,
>
> 10. Such other and further relief as the Court deems just.

8

(Doc. 1-2, Complaint at 12.)  Nowhere in the complaint are any dollar amounts set forth.  Accordingly, it is appropriate in this instance to look beyond the face of the complaint to determine the amount in controversy and, in doing so, the preponderance of the evidence standard is applied.

Defendant offers the Declaration of Gregory Seaman, Director of Customer Solutions at HDCC, in support of its contention that the amount in controversy exceeds $5 million.[1]  (Doc. 14, Declaration of Gregory Seaman.)  Plaintiff contends that HDCC's allegedly defective notices were used "beginning at least four years before the date of this complaint" and seeks its various forms of relief covering HDCC's activities during this time period, which covers August 2004 to the present.  (Doc. 1-2 at 11.)  Seaman states that since 2004, there have been more than

---

[1] Plaintiff objects to Seaman's declaration on hearsay grounds and because he claims it lacks foundation and is not based on personal knowledge.  However, as Director of Customer Solutions, Seaman has access to HDCC's account records, reviews certain account records, and is familiar with business practices for maintaining the records.  He asserts that the account records are maintained in the ordinary course of business as HDCC extends credit to its customers as part of its regular business activity.  In addition, he caused a review to be performed for California accounts relevant to this case.  As Seaman's declaration is based on his review of records maintained by HDCC in the ordinary course of business, the requirements of Fed. R. Evid. 803(6) are met and the hearsay objection is overruled.  Plaintiff's objection based on lack of personal knowledge is also overruled.  Seaman is competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of HDCC account data. *See United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977) (finding that an employee familiar with "normal company procedures...had ample personal knowledge to testify on that subject").

9

2,512 repossessions in California for which notices of intent to dispose of repossessed collateral were issued and deficiencies were still owed after sale of the motorcycle. (Doc. 14 at ¶5.) He claims that HDCC's account records reflect that in California in 2007 and 2008, the average amount of deficiency owed on repossessions was $8000 and $7300, respectively. (*Id*. at ¶4.) Nationally, the average amount of deficiency owed on repossessions was $7400 in 2005 and $8100 in 2006. (*Id*.) In total, Seaman states that HDCC account records reflect that approximately $20.7 million in deficiencies were owed to HDCC by all California buyers where a notice of intent to dispose of repossessed collateral was issued from 2004 to the present and a deficiency remained after sale of the motorcycle. (*Id*. at ¶3.)

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn*, 281 F.3d at 840 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). In calculating the value of an injunction, the amount in controversy is satisfied if either party can gain or lose the jurisdictional amount. *In re: Ford Motor Co./ Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (quoting *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) ("The value of the thing sought to be accomplished by the action may relate to either or any party to the action.")); *Sanchez*, 102 F.3d at 405. Under this "either viewpoint" rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce. *In re Ford Motor Co.,* 264 F.3d at 958.

10

Plaintiff wrongly contends that the uncollected deficiencies are not properly included in the amount in controversy. If Plaintiff succeeds, Defendant would lose its right to recover over $20 million in such deficiencies, which is measured by aggregating all potential class members' claims as proscribed by the CAFA. *See* 28 U.S.C. § 1332(d)(6). This is the amount at issue for Defendant. Whether the notices issued by HDCC were valid under ASFA and permit HDCC to pursue as yet uncollected deficiencies is an issue of law and fact that is the subject of this lawsuit. Plaintiff admits as much when he describes the questions of "whether HDCC is owed deficiency balances from members of the proposed class whose vehicles were disposed of following a defective NOTICE" and "whether HDCC had a legal right to collect or attempt to collect any alleged deficiency" as questions of law and fact common to the proposed class. (Doc. 1-2 at 8-9.) As such, this issue has not yet been determined and is appropriately a matter "in controversy," which includes the amount of each deficiency.

Defendant's evidence shows it is "more likely than not" that the amount in controversy exceeds $5 million. With over 2,500 class members and an average account deficiency in the range of $7000-$8000 each, it is indisputable that more than $5 million is at issue in this case.

### V. CONCLUSION.

For the reasons set forth above, Plaintiff's motion to remand this case to state court is DENIED.

11

IT IS SO ORDERED.

**Dated:   February 23, 2009**              /s/ Oliver W. Wanger
                                            UNITED STATES DISTRICT JUDGE