**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

LUIS MANUAL MORA, individually
and on behalf of the class,

              Plaintiffs,

HARLEY-DAVIDSON CREDIT CORP.,
A corporation; and DOES 1 through 10
inclusive,

              Defendants.
_____/

Case No. 1: 08-cv-01453-AWI-BAM

**FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; APPOINTMENT OF REPRESENTATIVE PLAINTIFF AND LEAD COUNSEL**

## I. INTRODUCTION

On August 19, 2008, Plaintiff Luis Manual Mora ("Plaintiff"), individually and on behalf of a proposed class, filed a putative class action complaint against Harley-Davidson Credit Corporation ("Harley") in the Superior Court of the State of California in and for the County of Merced. (Pl.'s Compl., the "State Court Action," Doc. 1, Attach. 1.)  On September 26, 2008, Harley, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and the Class Action Fairness Act of 2005 ("CAFA") removed the State Court Action to this Court.  (Doc. 1.)

By notice filed on February 24, 2012, Plaintiff filed a motion to certify a putative class in this matter.  (Doc. 84.)  Harley filed an opposition on March 16, 2012.[1]  (Doc. 92.)  Plaintiff filed his

---

[1] The Parties have filed numerous objections to the declarations offered in support of, or opposition to, Plaintiff's Motion for Class Certification. *See*, Doc. 95, 99.  The Court has not relied on any of the disputed portions of the declarations to grant class certification.  To the extent that the Court may have considered some of the disputed evidence in granting class

1    Reply Brief on March 23, 2012.  (Doc. 100.)   The Court heard oral arguments on the matter on

2    March 30, 2012.  (Doc. 101.)  Counsel William Kreig appeared on behalf of the Plaintiff.  Counsel

3    Heather Hoesterey appeared on behalf of Harley.  (Doc. 101.)  Having considered the moving,

4    opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at

5    the March 30, 2012 hearing, as well as the Court's file[2], the Court issues the following findings and

6    recommendations.

7                           **II.  FACTUAL AND PROCEDURAL BACKGROUND**

8    **A.        Factual Background**

9            On or about October 4, 2006, Plaintiff purchased a "Sportster XL 883" Harley-Davidson

10   motorcycle (the "Motorcycle") from Golden Valley Harley Davidson ("Golden Valley").

11   (Declaration of Luis Mora, "Mora Decl.," ¶ 2, Doc. 86; Declaration of Tom Fleming, "Fleming

12   Decl.," ¶ 2, Ex. B, Doc. 94.)  To complete the purchase, Plaintiff entered into a Motorcycle Purchase

13   Agreement with Golden Valley.  (Fleming Decl., ¶¶ 6, 7, Ex. B, C, Doc. 94.)  To fund the purchase of

14   the Motorcycle, Plaintiff applied for a loan from Eaglemark Savings Bank of Nevada ("ESB") (the

15   "Note").  (Fleming Decl., ¶ 5, Ex. A, Doc. 94.)  ESB is a subsidiary of Harley that originates retail

16   loans for individual Harley-Davidson motorcycle purchasers.  (Declaration of Heather Hoesterey,

17   "Hoesterey Decl.," ¶ 2, Ex. B, Doc. 93.)

18   _____

19   certification, the objections are overruled.

20        [2]  Plaintiff has requested the Court take judicial notice of Plaintiff's Statement of Undisputed Facts ("SUF") in
     Support of Plaintiff's Cross Motion. (Doc. 90.) A federal court may take judicial notice of adjudicative facts. Fed. R. Evid.
21   201(a),(d). Facts subject to judicial notice are those which are either "(1) generally known within the territorial jurisdiction
     of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably
22   be questioned." Fed. R. Evid. 201(b). A court may not take judicial notice of a matter that is in dispute. *Lee v. City of Los
     Angeles*, 250 F.3d 668, 690 (9th Cir.2001). Plaintiff's SUF is not the proper subject of judicial notice.  The SUF is part of
23   Plaintiff's argument and ordinarily would be filed as pleadings.  *See Pavone v. Citi Credit Services, Inc.,* 60 F. Supp. 2d 1040,
     1045 (S.D. Cal. 1997).  Plaintiff also purports to offer the SUF pursuant to Local Rule 260.  However, Local Rule 260 only
24   concerns motions for summary adjudication.  Accordingly, the Court will not take judicial notice of Plaintiff's SUF.  Plaintiff
     also requests the Court take judicial notice of all the pleadings, declarations and orders relating to the motion for summary
25   judgment previously litigated in this case. (Doc. 45-72.) To the extent Plaintiff seeks judicial notice of the Order granting
     in part, and denying in part the parties' cross-motions for summary judgment (Doc. 72), the request is granted.  To the extent
26   that Plaintiff seeks judicial notice of the *existence* of the pleadings and declarations related to the cross-motions for summary
     judgment, the request is granted.  However, the Court will not take judicial notice of the contents of Plaintiff's pleadings and
27   declarations to the extent Plaintiff seeks to establish the truth of the matters asserted therein.  In this regard, like the SUF,
     these documents are not facts properly the subject of judicial notice.  The Court reminds Plaintiff, however, that in issuing
28   these findings and recommendations, the Court considers the entire file.

1     Golden Valley was not a party to the Note, and neither ESB nor Harley were parties to the

2  Motorcycle Purchase Agreement.  (Fleming Decl., ¶ 6, Ex. B, Doc. 94.)  Golden Valley, however,

3   arranged financing for the sale of the Motorcycle through ESB, and Plaintiff did not obtain a loan

4  from ESB independent of his dealings with Golden Valley.  (Mora Decl., ¶ 2, Doc. 86.)  Rather, all

5  the papers Plaintiff signed for the purchase of the Motorcycle, *e.g.,* the Motorcycle Purchase

6  Agreement and the Note, were completed at Golden Valley.  (Mora Decl., ¶ 2, Doc. 86.)

7     After funding the loan, ESB sold the Note to Harley.  (Fleming Decl., ¶ 3, Doc. 94.)

8  Thereafter, Harley began servicing the loan, collecting payments and maintaining the account records

9  related thereto.  (Fleming Decl., ¶ 3, Doc. 94.)  Sometime thereafter, Plaintiff claimed the Motorcycle

10  suffered from various mechanical problems.  (Mora Decl., ¶ 4, Doc. 86.)  Subsequently, in August of

11  2007, Plaintiff voluntarily surrendered the Motorcycle to Golden Valley.   (Hoesterey Decl., ¶ 1, Ex.

12  A at 55: 6-12, Doc. 93); (Mora Decl., ¶ 4, Doc. 86.)  At Golden Valley's instruction, Plaintiff

13  contacted a Harley representative, who informed Plaintiff he would remain liable on the Note.

14  (Hoesterey Decl., ¶ 1, Ex. A at 55: 13-19, 56: 3-17, Doc. 93)

15     On September 4, 2007, Harley sent Plaintiff a "Notice of Intent to Dispose of Repossessed

16  Collateral" (the "NOI").  (Mora Decl., ¶ 5, Doc. 86 ); (Fleming Decl., ¶ 12, Ex. E, Doc. 94.)  The NOI

17  included information such as the contract balance and an "Estimated Repossession Fee."  (Fleming

18  Decl., ¶¶ 17, 19-21, Doc. 94.)  Harley provides estimated, rather than actual repossession fees because

19  Harley does not collect these fees, and does not know the precise repossession fee to be collected.

20  (Fleming Decl., ¶¶ 30, Doc. 94.)  Rather, borrowers pay these fees directly to the third party

21  repossessor if the borrower retakes possession of his or her motorcycle after the repossession.

22  (Harley's Opp. Class Cert., 6: 9-11, Doc. 92.)

23     On November 8, 2007, Harley sent Plaintiff a "Repossession Accounting Statement"

24  representing that the Motorcycle had been sold on October 9, 2007, and that Plaintiff was liable for a

25  deficiency of $4,358.92.  (Mora Decl., ¶ 6, Doc. 86 ); (Fleming Decl., ¶ 8, Ex. D, Doc. 94.)  Plaintiff

26  and Harley subsequently entered into a payment plan to resolve the deficiency.  (Mora Decl., ¶ 7, Doc.

27  86 ); (Fleming Decl., ¶ 8, Ex. D, Doc. 94.) Plaintiff had only made approximately $100 in payments

28  before defaulting on the payment plan.  (Mora Decl., ¶ 7, Doc. 86 ); (Fleming Decl., ¶ 8, Ex. D, Doc.

1 94.)

2 **B.      Plaintiff's Complaint**

3        Plaintiff brings claims against Harley under the Rees-Levering Automobile Sales Finance

4 Act, Cal. Civ. Code § 2981, *et seq.*  ("Rees-Levering"), and California's Unfair Competition Law,

5 Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL").  Plaintiff's claims under Rees-Levering allege

6 the NOI Harley sent to Plaintiff and the putative class members failed to provide information

7 required under Rees-Levering.  (Pl.'s Compl., ¶ 8, Doc. 1, Attach. 1.)  Under Rees-Levering, a lender

8 who fails to provide the required information in their NOIs forfeits its right to collect on any

9 deficiency owed after a repossessed vehicle is auctioned.  (Pl.'s Compl., ¶ 7, 8,  Doc. 1, Attach. 1.)

10        Plaintiff's UCL claims are claims for "unlawful" business practices, predicated on the alleged

11 Rees-Levering violations.  (Pl.'s Compl., ¶¶ 31-33, Doc. 1, Attach. 1.)  Plaintiff seeks for himself,

12 and on behalf of the putative class, an order of restitution for all deficiency payments made by

13 borrowers after receiving the NOI, as well as injunctive relief prohibiting Harley from attempting to

14 collect deficiency payments from borrowers who received the subject NOI. (Pl.'s Compl., 8, Doc. 1,

15 Attach. 1.)

16 **C.      Previously Determined Merits Issues**

17        On February 12, 2010, the Honorable Judge Oliver W. Wanger issued a scheduling order

18 requiring the parties to brief the limited issue of the NOI's compliance with Rees-Levering.  (Doc.

19 44.)  Judge Wanger, however, specifically declined to address whether Rees-Levering applied to

20 Harley's lending and repossession activities.  (Doc. 71, 24: 20-22.)  Rather, he assumed Rees-

21 Levering applied and reserved judgment on its applicability.  Between May and July of 2010, the

22 parties briefed cross-motions for summary judgment on the issue of whether Harley's NOI complied

23 with the requirements of Rees-Levering as set forth in Section 2983.2(a).

24        The NOI requirements imposed by Section 2983.2(a) govern the manner in which a creditor

25 may repossess a vehicle.  Prior to repossessing a vehicle, Section 2983.2(a) requires creditors to

26 provide a Notice of Intent to Dispose of the Vehicle, at least 15 days prior to the planned disposition

27 of the vehicle, providing the following information (as relevant to Plaintiff's claims):

28

4

(1) Sets forth that those persons shall have a right to redeem the motor vehicle by paying in full the indebtedness evidenced by the contract until the expiration of 15 days from the date of giving or mailing the notice and **provides an itemization of the contract balance and of any delinquency, collection or repossession costs and fees** and sets forth the computation or estimate of the amount of any credit for unearned finance charges or canceled insurance as of the date of the notice;

(2) States either that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice **and all the conditions precedent thereto** or that there is no right of reinstatement and provides a statement of reasons therefor; and

(5) **Designates the name and address of the person or office to whom payment shall be made.**

Cal. Civ. Code 2983.2(a) (emphasis added).

Plaintiff argued the NOI was deficient, *inter alia,* because the notice failed to state the actual amount Plaintiff was required to pay to effect reinstatement as required by Sections 2983.2(a)(1) &(2); specifically, the NOI did not include the *actual* amount owed in connection with repossession fees. (Doc. 72, 6: 6-10.) Plaintiff additionally argued that, because payments relating to the repossession of the motorcycle were to be made directly to the repossessing entity, the NOI was deficient because it did not provide contact information for the repossessing entity. (Doc. 72, 9: 23-28.) Harley responded that the NOI complied with Sections 2983.2(a)(1) & (2) because the NOI provided Plaintiff with a *reasonable* estimate of repossession fees, and that Harley otherwise substantially complied with the NOI requirements of Rees-Levering. (Doc. 72, 6: 6-10.)

A primary issue of contention between the parties was the quantum of compliance required by Rees-Levering. Plaintiff argued Rees-Levering requires "strict compliance," which would require Harley provide the specific amount of repossession fees, to whom those fees are to be paid, and where the payments of those fees can be made. (Doc. 50, Pl.'s MSJ at 7) (citing *Bank of America v. Lallana,* 19 Cal. 4th 203, 215 (Cal. 1998); *Juarez v. Arcadia Financial,* 152 Cal. App. 4th 889 (2007)). Harley, on the other hand, argued that only "substantial compliance" was necessary under Rees-Levering. (Doc. 54, 12-13) (arguing that the above-referenced cases do not require "strict compliance," but rather, held that a notice with "no useful information" does not meet any standard of compliance); (*see also,* Doc. 54, 14: 14-16) (arguing that, in California, "[u]nless the intent of a statute can only be served by demanding strict compliance with its terms, substantial compliance is

5

the governing test," citing *N. Pacifica LLC v. Cal. Coastal Com.,* 166 Cal. App. 4th 1416, 1431-32 (2008).  Judge Wanger found, even assuming *arguendo* that only substantial compliance was required under Rees-Levering, Harley's NOI was deficient.

Judge Wanger relied heavily on *Juarez v. Arcadia Financial, Ltd.,* 152 Cal. App. 4th 889, 903 (Cal. Ct. App. 2007) and its progeny in finding that under Rees-Levering, the NOI must state the *specific* amounts due, to whom they are due, and the contact information for those parties.  (Doc. 72, 7-9); *See also, Argulles-Romero v. Superior Court,* 184 Cal. App. 4th 825, 830 (Cal. Ct. App. 2010); *Salenga v. Mitsubishi Motors Credit of America, Inc.,* 183 Cal. App. 4th 986, 999 (Cal. Ct. App. 4th 2010.)  Citing *Juarez,* Judge Wanger stated that the NOI must provide a level of specificity regarding the amounts due, as well the entities to whom those amounts are to be paid, so that the consumer has sufficient information to cure the default without the need for further inquiry.  (Doc. 72, 7: 1-14.)  Judge Wanger elaborated by stating "Section 2983.2 requires a creditor to provide all information it knows, reasonably should know, or has the ability to discern regarding the amounts a debtor must pay to third parties."  (Doc. 72, 7: 13-21.)  Harley's NOI did not contain the specific amount of the repossession fee, nor the information for the repossession agency to whom the fees needed to be paid.  Judge Wanger found that "[t]he NOI did not provide Plaintiff with sufficient information to allow him to fulfill all of the conditions precedent to reinstatement 'without further need for inquiry' as required by Section 2983.2(a)(2)."  *See also, Juarez,* 152 Cal. App. 4th at 904-05.

Harley argued it did not know, and could not reasonably ascertain the amount of fees Plaintiff owed to third party repossession agencies.[3]  (Doc. 72, 8-9.)  As such, at the time Harley sent Plaintiff the NOI, the estimated repossession fee provided in the NOI was sufficient to meet the requirements of Section 2983.2(a)(2).  (Doc. 72, 8-9.)  Judge Wanger rejected this argument, stating that the record demonstrated Harley could obtain the actual amounts of repossession fees by placing a phone

---

[3]  Harley has requested the Court take judicial notice of (1) the proceedings of the October 8, 2010 hearing on the parties' cross-motions for summary judgment, (2) Judge Wanger's Amended Order granting Plaintiff's Motion for summary judgment in part and denying Harley's motion for summary judgment.  (Doc. 96.)  Harley has also requested the Court take judicial notice of the fact that Harley is a licensed California Finance Lender, and that ESB is a Nevada state thrift chartered as an Industrial Loan Company and insured by the Federal Deposit Insurance Corporation ("FDIC") (Doc. 96.)  Each of these facts are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Additionally, none of these facts are in dispute.  As such, the Court will grant Harley's request for judicial notice. *See,* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.2001).

call to the relevant entity.  (Doc. 72, 9: 1-9.)  Judge Wanger also noted the deposition testimony of

Harley's agent, who stated that when a borrower responded to an NOI and inquired about the exact

amount of repossession fees, a Harley representative would place the borrower on hold, and call the

relevant entity to obtain the information.  (Doc. 72, 9: 1-9.)  Judge Wanger did, however,

acknowledge that "in some rare situations, estimates of repossession costs may be sufficient to

comply with section 2983.2(a)(2)."  (Doc. 72, 10: 13-16.)

Ultimately, the Court concluded the NOI Harley sent Plaintiff violated Rees-Levering in three

ways: (1) the NOI failed to include the *correct* amount of repossession fees owed; (2) failed to

provide a *reasonable estimate* of the repossession fees owed; and (3) failed to provide the contact

information for the repossession entity.[4]  (Doc. 72, 11: 7-19.)

**D.      Plaintiffs' Motion For Class Certification**

Plaintiff seeks to certify the following class:

> All persons who purchased a motor vehicle in California that was subject to
> California's Rees-Levering Automobile Sales Finance Act, Cal. Civil Code § 2981, et
> seq., whose vehicle was repossessed or voluntarily surrendered to [Harley] or its
> agents, and to whom [Harley] sent a notice of intent to dispose of repossessed
> collateral since August 19, 2004, and against whom [Harley] claimed a deficiency
> was owed.

(Pl.'s Mot. Class Cert., 3: 16-23, Doc. 85.)  (the "Class.")  Plaintiff seeks certification of the Class

pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appointment of Plaintiff Luis Manual Mora as Class

representative, and appointment of Plaintiffs's counsel, the law firm of Kemnizter, Barron & Krieg,

LLP, as lead counsel for the Class pursuant to Fed. R. Civ. P. 23(g).  Plaintiff asserts claims under

Rees-Levering and the UCL on behalf of the Class.

/././

---

[4]  Judge Wanger specifically noted that his decision was intended to apply to the merits of Plaintiff's claims only.
(Doc. 71, 15: 19-19) ("But since we're not at the class certification stage, the Court's intent is that this decision have specific
applicability to plaintiff only.")

**IV.    DISCUSSION**

**A.        Rule 23 Certification Analysis**

      **1.        Legal Standard**

      A class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  In addition to the requirements imposed by Rule 23(a), Plaintiff bears the burden of demonstrating that the class is maintainable pursuant to Rule 23(b).  *Narouz v. Charter Commc'ns, LLC,* 591 F.3d 1261, 1266 (9th Cir. 2010).  In this case, Plaintiff seeks certification of the Class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), Plaintiff must also demonstrate: (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" ("Predominance") and (2) a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." ("Superiority"); Fed. R. Civ. P. 23(b)(3).

      Rule 23 is more than a pleading standard.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes,* - - U.S. - -, 131 S. Ct. 2541 at 2552 (2011) ("*Dukes*") (emphasis in original).  "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."  *General Telephone Co. Of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

      When considering a motion for class certification, the Court must conduct a "rigorous analysis" to determine "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2551-2; *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 980 (9th Cir. 2011).   Frequently "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Ellis,* 657 F.3d at 980 (citing *Dukes,* 131 S. Ct. at 2551).  While the court is generally required to accept a Plaintiff's allegations as true, *Blackie v. Barrack*, 524 F.2d 891, 901, n.17 (9th Cir. 1975), a court is not required to "unquestioningly accept a

8

1  plaintiff's arguments as to the necessary Rule 23 determinations." *Campion v. Old Republic Home*

2  *Protection Co., Inc.*, 272 F.R.D. 517, 525 (S.D. Cal. 2011) (internal citation omitted).  In fact, the

3  Court *must* probe behind the pleadings if doing so is necessary to make findings on the Rule 23

4  certification decision. *Ellis,* 657 F.3d at 981.

5        **2.**    **Numerosity**

6        Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all

7  of the class members would be impracticable. Fed. R. Civ. P. 23(a). "Impracticability does not mean

8  'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Harris*

9  *v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964) (quoting *Advertising*

10  *Specialty Nat. Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir.1956)). Additionally, the exact size of the

11  class need not be known so long as "general knowledge and common sense indicate that it is large."

12  *Perez-Funez v. Dist. Dir.,* 611 F. Supp. 990, 995 (C.D. Cal. 1984).

13        **a.**    **Size of Class**

14        Plaintiff has submitted evidence that Harley sent NOIs to at least 2,172 Class members in the

15  relevant period.  (Pl.'s Mot., 6: 24-5, Doc. 85.)  Plaintiff has also submitted evidence that Harley has

16  collected deficiency payments from approximately 215 Class members.[5] (Pl.'s Mot., 6: 26-7, Doc.

17  85.)  The number of proposed Class members, at either 2,172 or 215, satisfies the numerosity

18  requirement.  Individual suits for these Class members would be unreasonably difficult and

19  inconvenient.

20        Harley argues numerosity is not met for two reasons: (1) Plaintiff's proposed Class is over-

21  broad because Plaintiff purports to represent Class members whose motorcycles were repossessed,

22  whereas Plaintiff voluntarily surrendered his Motorcycle; and (2) Rees-Levering does not apply to

23  Harley's and their affiliate's lending and repossession activities, thus, Plaintiff's proposed Class does

24  not contain any members.  (Harley's Opp., 17-18, Doc. 92.)

25

26

27

28      [5] Notably, in Harley's Notice of Removal, Harley acknowledged that "if this action is determined to be appropriate for class treatment, the number of proposed class members exceeds 100."  (Harley's Notice of Removal, 3: 18-22, Doc. 1.)

1    Plaintiff responds that, with respect to the NOI requirements imposed under Rees-Levering,

2    there is no legal distinction between a voluntary surrender and a repossession of a motorcycle. (Pl.'s

3    Reply, 7: 24-8, Doc. 100.)  Plaintiff also argues that the question of Rees-Levering's applicability to

4    Harley's activities is a merits question improper for consideration on class certification.   (Pl.'s

5    Reply, 5: 15-23, Doc. 100.)

6    The size of the Class is not effected by whether the vehicle was voluntarily surrendered or

7    repossessed.  The NOI requirements under Rees-Levering regard both voluntary surrender and

8    involuntary repossession of motor vehicles without distinction.  *See* Cal. Civ. Code § 2983.2(a) (". .

9    . at least 15 days' written notice of intent to dispose of a ***repossessed or surrendered motor*** vehicle

10   shall be given to all persons liable on the contract . . . those persons shall be liable for any deficiency

11   after disposition of the ***repossessed or surrendered*** motor vehicle only if the notice prescribed by

12   this section is given within 60 days of the ***repossession or surrender*** and does all the following . . .

13   .") (emphasis added).   Even assuming, from a factual standpoint, Plaintiff's proposed Class was

14   over-broad, Harley's argument does not suggest the Class plaintiff *proposed* is sufficiently small that

15   joinder would be practicable.  Harley's argument is more appropriately considered as part of

16   Plaintiff's burden to demonstrate his claims are *typical* of the proposed Class members, or that

17   common issues *predominate* between and among the proposed Class members.

18                         **b.    Rees-Levering's Applicability is a Merits-Based Consideration**

19   The Court finds that whether Rees-Levering applies to Harley's lending and repossession

20   activities is a merits question that need not be determined at the class certification stage.  As a

21   general rule, the merits of a claim, to the extent they do not overlap with class certification issues, are

22   not considered at the class certification stage. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78

23   (1974); *Ellis,* 657 F.3d at 983.  Even post-*Dukes,* courts remain limited to resolving *factual* disputes

24   necessary to determine common, typical or predominant issues affecting the class as a whole.

25   *Dukes,* 131 S. Ct. at 2552 ("In this case, proof of commonality necessarily overlaps with respondents'

26   merits contention that Wal-Mart engages in a pattern or practice of discrimination"); *Ellis,* 657 F.3d

27   at 983 ("the district court was required to resolve any factual disputes necessary to determine

28

10

1   whether there was a common pattern and practice that could affect the class as a whole").

2          The question presented by Harley is a purely legal question.  It is a question common to the

3   entirety of the Class.  Harley has not presented any authority for the proposition a Court can consider

4   the applicability of a statute in which a defendant's liability is predicated at the class certification

5   stage, and the Court has found none.  At the class certification stage, Plaintiff is not required to prove

6   Harley's NOIs violated Rees-Levering.  Rather, Plaintiff's numerosity requirement entails a

7   demonstration that *if* Rees-Levering applies to Harley's NOIs, there are numerous Class members

8   such that joinder would be impractible.  Plaintiff has demonstrated that if Rees-Levering applies to

9   Harley's NOIs, there are 2,172 Class members.  Plaintiff has met his numerosity burden.

10         **3.    Commonality**

11         Rule 23(a)(2) requires "questions of law or fact common to the class."  Historically, the

12  requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and

13  law need not be common to satisfy the rule." *Hanlon,* 150 F.3d at 1019.  Indeed, "[e]ven a single

14  [common] question" will satisfy the Rule 23(a)(2) inquiry. *Dukes,* 131 S.Ct at 2556 (internal citation

15  omitted).

16         The Supreme Court's recent decision in *Dukes,* however, has undoubtedly increased the

17  burden on class representatives by requiring that they identify *how* common points of facts and law

18  will drive or resolve the litigation. *Dukes,* 131 S. Ct at 2552 ("What matters to class certification ...

19  is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide

20  proceeding to generate common answers apt to drive the resolution of the litigation.") (internal

21  citations omitted.) Under this standard, it is insufficient to merely allege any common question, for

22  example, "did Defendant's conduct violate the UCL or CLRA?"  *See Ellis v. Costco,* 657 F.3d at

23  981*; Dukes,* 131 S.Ct. at 2551-52 ("[a]ny competently class complaint literally raises common

24  'questions.'")

25         Plaintiff argues that "common questions of law and fact abound[,]" because all the NOIs used

26  by Harley suffer from common defects, and Harley employed a uniform procedure for producing and

27  sending each NOI (Pl's. Mot. Class Cert., 7, Doc. 85.)  These common questions include:

28

1      a.      Whether Harley's NOIs are subject to Rees-Levering;

2      b.      Whether Harley's NOIs complied with Rees-Levering;

3      c.      Whether Harley has a legal right to any alleged deficiency from putative class
               members based on the NOI; and

4
       d.      What forms of injunctive and/or declaratory relief are available to the putative
5               class.

6   (Pls.' Mot. Class Cert., 7, Doc. 85.)

7          Harley argues two individualized inquiries are necessary to determine liability and, as such,

8   commonality is not met. (Harley's Opp., 10-16, Doc. 92.)  Harley argues the sole premise for

9   Plaintiff's theory of liability relates to the reasonableness of Harley's estimated repossession fee

10  provided in its NOI to putative Class members.  Harley suggests this theory of liability would require

11  an individualized inquiry to determine whether a motorcycle was voluntarily surrendered and, if the

12  motorcycle was repossessed, whether the estimated repossession fee was reasonable in comparison

13  to the actual repossession fee. (Harley's Opp., 10-11, Doc. 92.)  Harley also argues that putative

14  class members receiving a loan from ESB after October of 2007 agreed to binding arbitration and

15  forfeited the right to participate in collective or representative proceedings. [6]

16         Plaintiff responds that evidence before the Court reveals several common questions capable

17  of generating common answers apt to drive the resolution of the litigation.  Plaintiff argues that,

18  despite Harley's use of two different NOIs during the relevant class period, the same legal defects

19  remain. (Pl.'s Reply, 5-6, Doc. 100.)  Plaintiff argues that both NOIs provide only estimated

20  repossession fees, fail to disclose the entity to whom those fees are to be paid, and where those fees

21  can be paid. (Pl.'s Reply, 6: 1-3, Doc. 100.)  Plaintiff also argues that Rees-Levering's applicability

22  _____

23         [6]  In general, Harley's commonality arguments relating to individual inquiries involved in determining the
    reasonableness of repossession fees, as well as Harley's argument relating to unnamed Class members having agreed to
24  arbitration, are not appropriate under the  Rule 23(a)(2) analysis.  These arguments essentially assert that these two
    individualized inquiries are the predominant issues involved in determining Harley's liability.  Indeed, Harley concludes that
25  "[g]iven the wide variety of circumstances affecting the individual accounts, common questions do not predominate." (Harley
    Opp., 15: 2-3, Doc. 92.)   The goal of the 23(a)(2) analysis is not to identify the *predominant* issues related to class
26  certification, but rather, to identify *some* common questions of fact or law, the common answers to which will drive the
    resolution of the litigation for the proposed class as a whole. *Dukes,* 131 S. Ct at 2552  It is not necessary, under Rule 23(a)(2),
27  to demonstrate the predominant issues with respect to the Class are indeed common issues. Harley's arguments - examined
    in greater detail below, *supra* Section IV.B.1. - are more appropriately considered under the Rule 23(b)(3) analysis, which
28  specifically endeavors to identify the predominate issues.

1  to Harley's lending and repossession activities is a threshold legal issue common to the Class.  (Pl.'s

2  Reply, 5: 15-23, Doc. 100.)

3       Plaintiff has satisfied his commonality burden.  The evidence before the Court demonstrates

4  there are several common questions capable of resolving issues central to the validity of all the Class

5  member's claims.  As Plaintiff correctly points out, a common legal question necessary to resolve the

6  Class's claims is whether Rees-Levering applies to Harley's conduct.  As the Supreme Court has

7  instructed, "[e]ven a single [common] question" will satisfy the Rule 23(a)(2) inquiry.  *Dukes,* 131 S.

8  Ct at 2556 (internal citation omitted).

9       Moreover, the factual circumstances of this case allow for a determination of Harley's

10  liability to Plaintiff and the Class on a class-wide basis.  For instance, while the parties dispute

11  whether specific repossession fees must be provided, or whether estimates are sufficient, there is no

12  dispute that the NOIs only provided estimates.  Judge Wanger determined Harley was required to

13  provide the specific repossession fee in Plaintiff's case.   A similar determination for the Class could

14  resolve the issue of Harley's liability.  Similarly, there is no dispute between the parties that

15  Plaintiff's NOI failed to disclose the identity and contact information for the repossessing agency.

16  Judge Wanger found this failure in Plaintiff's NOI violated Rees-Levering.  A similar determination

17  for the Class could resolve the issue of Harley's liability.[7]

18

19

20       [7]  In it's Opposition to Plaintiff's Motion for Class Certification, Harley made no arguments regarding its failure
    to include the identity or contact information for the repossession agency.  At oral argument, however, Harley claimed it did
21  include this information in its NOIs to putative Class members.  Nonetheless, there is no evidence before the Court to support
    this argument.  In support of its Opposition, Harley attached two sample NOIs used throughout the Class period.  (Fleming
22  Decl., ¶¶ 12. 14, Ex. E, F, Doc. 94.)  Both NOIs state "[i]f you meet the conditions [outlined in this NOI] and you wish to
    reinstate your Contract or you wish to redeem the [Motorcycle], the [Motorcycle] will be returned to you at the following
23  location(s)," and provides the location where the motorcycle is held.  (Fleming Decl., ¶¶ 12. 14, Ex. E, F, Doc. 94.)  There
    is no evidence before the Court, however, that the location where the motorcycle is held is the same location where the
24  repossession payments need to be made.  Moreover, the NOIs do not state the repossession fees are to be made directly to
    this location.  On the contrary, the language of the NOIs indicate the repossession fees would be made directly to Harley.
25  By Harley's own admission, this is not accurate.  *See,* (Harley's Opp. Class Cert., 6: 9-11, Doc. 92.) ("At the time [Harley]
    sent Plaintiff his Notice, it did not know the precise fee to be collected, in part because [Harley] does not collect such fees.
26  *See id.*  Rather, borrowers pay these fees directly to the third parties if the borrower re-takes possession of his or her
    motorcycle after repossession.")  The location of where the motorcycle is held does not equate to identifying the repossession
27  agency, and where payments of repossession fees are to be made.  Even if the location of the repossessed motorcycle and the
    identity and contact information of the repossessing agency were one in the same, Harley's NOIs fail to inform borrowers
28  that a separate payment must be made to the repossession agency.

1   While the parties dispute whether strict compliance or substantial compliance is necessary to

2   comply with Rees-Levering, there is no dispute that strict compliance was not in fact utilized.

3   Whether strict compliance is actually required under Rees-Levering is an essential legal issue

4   necessary to the determination of Harley's liability, and this issue too is common to the Class as a

5   whole.  Accordingly, Plaintiff's claims raise common questions capable of generating common

6   answers necessary to litigate the claims of the Class as a whole.

7       **4.    Typicality**

8   Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the

9   claims or defenses of the class.  The purpose of Rule 23(a)(3) is "to assure that the interest of the

10  named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.,* 976 F.2d

11  497, 508 (9th Cir.1992).  The requirement is satisfied where the named plaintiff has the same or

12  similar injury as the unnamed class members, the action is based on conduct which is not unique to

13  the named plaintiffs, and other class members have been injured by the same course of conduct.  *Id.*

14  Plaintiff argues that typicality is met because, *inter alia,* Plaintiff received one of Harley's

15  standard NOIs containing the same alleged defects as the NOIs sent to putative class members, and

16  Harley has made a deficiency claim against Plaintiff subsequent to the sale of his Motorcycle.  (Pl.'s

17  Mot. Class Cert., 5, Doc. 85.)  Harley responds that because Plaintiff voluntarily surrendered his

18  Motorcycle, whereas the majority of Class members' motorcycles were repossessed, Plaintiff's

19  claims are atypical of the Class members.  (Harley's Opp., 6, Doc. 92.)

20  The crux of Plaintiff's Rees-Levering claim is that because he received a non-complying

21  NOI, Harley has lost the right to collect any deficiency payments.  NOIs are sent to Class members

22  who have had their vehicles repossessed or who have voluntarily surrendered their vehicles.  The

23  substance of the NOIs, in either case, is the same.  At least part of Plaintiff's theories of liability, i.e.,

24  Harley's failure to designate who repossession payments were to be made, as well as the identity and

25  contact information for the repossession agency, are identical to the claims of the Class.   While it is

26  true Plaintiff should have never been assessed a repossession fee in the first instance, Harley was not

27  relieved of its obligation to provide this information once it assessed such a fee.

28

14

1    Additionally, Plaintiff's claim that Harley provided estimated, rather than specific

2   repossession fees is identical to those of the Class.  Whether Harley's estimate was off by $600 - as

3   was the case with Plaintiff - or $6 - which may very well be the case with a substantial portion of the

4   Class members - the failure to provide a *specific* amount of repossession fee is the identical type of

5   injury to all Class members, even though it may have been suffered in different degrees.  Plaintiff's

6   claims do not rely on circumstances unique to Plaintiff's experience.  Rather, the evidence reveals

7   Plaintiff's claims to be predicated on standard NOIs sent to putative Class members by Harley.

8   Plaintiff's claims are typical of the Class.

9       **5.      Adequacy of Representation**

10      Rule 23 requires that a class be certified only if "representative parties will fairly and

11   adequately protect the interests of the class." This factor requires that (1) the proposed

12   representatives do not have conflicts of interest with the proposed class, and (2) that the

13   representatives and their counsel will vigorously prosecute the action on behalf of the class. *Hanlon,*

14   159, F.3d at 120.

15      Harley argues Plaintiff is not an adequate representative, reiterating the distinction between

16   Class members who had their motorcycles repossessed, and individuals like Plaintiff who voluntarily

17   surrendered their motorcycle.  (Harley's Opp., 17, Doc. 92.)  Moreover, Harley argues that because

18   "Plaintiff has already proven as a matter of law that his particular Notice did not comply with [Rees-

19   Levering, Plaintiff] therefore lacks any incentive to continue litigating on behalf of a putative class

20   members whole estimates may or may not have complied with [Rees-Levering]." (Harley's Opp., 17,

21   Doc. 92.)   Plaintiff responds that no cause of action has been disposed of, and that Plaintiff has not

22   received any compensation or remedy for his claims.  Plaintiff has also referred to his sworn

23   declaration, which declares his intention to put the interests of the Class ahead of his own.  (Mora

24   Dec. ¶ 12, Doc. 86.)

25      Plaintiff, and his counsel will fairly and adequately protect the interests of the Class.  Harley

26   offers no authority for the proposition that, because Plaintiff prevailed on the merits in his individual

27   capacity, this circumstance militates against his ability to represent the interests of the Class.  Harley

28

1    has not offered any argument or evidence suggesting Plaintiff is presented with unique defenses that

2    would detract from his ability to represent the Class, and there is no evidence to indicate such

3    circumstances are present.  There is no evidence Plaintiff has any interests antagonistic to the Class,

4    or that Plaintiff or his counsel would otherwise fail to vigorously prosecute the action on behalf of

5    the Class.

6    **B.      Rule 23(b)(3) Analysis**

7             Having satisfied the requirements of Rule 23(a), a plaintiff must next demonstrate that the

8    action can be appropriately certified under Rule 23(b)(1), (b)(1) or (b)(3).  Plaintiff seeks to certify

9    the class under Rule 23(b)(3).  To do so, Plaintiff must establish that  (1) "questions of law or fact

10   common to the members of the class predominate over any questions affecting only individual

11   members" ("Predominance") and (2) a class action is "superior to other available methods for the fair

12   and efficient adjudication of the controversy." ("Superiority"); Fed. R. Civ. P. 23(b)(3).

13            **1.      Predominance**

14            Mere commonality pursuant to Rule 23(a)(2) is insufficient to meet Rule 23(b)(3)'s

15   predominance requirement. *See Hanlon*, 150 F.3d at 1022.  Rule 23(b)(3) instead concerns "the

16   relationship between the common and individual issues. 'When common questions present a

17   significant aspect of the case and they can be resolved for all members of the class in a single

18   adjudication, there is clear justification for handling the dispute on a representative rather than an

19   individual basis.' " *Id*. (citing Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &

20   Procedure § 1778 (2d ed.1986)). "Because no precise test can determine whether common issues

21   predominate, the Court must pragmatically assess the entire action and the issues involved." *Romero*

22   *v. Producers Dairy Foods, Inc*., 235 F.R.D. 474, 489 (E.D. Cal. 2006).  "[T]he main concern in the

23   predominance inquiry . . . [is] the balance between individual and common issues.*" Kelly v.*

24   *Microsoft Corp*., 395 Fed. Appx. 431, 433 (9th Cir. 2010) (internal citation omitted.)

25            Plaintiff argues that predominance is met because

26            "fundamentally, challenging the legality of [Harley's] NOI, and thus, its right to a
             deficiency would necessarily need to address 3 primary questions.  First, whether
27           [Harley's NOI is subject to [Rees-Levering]]; second, whether the NOI complies with
             the ASFA, and; third, what remedies are appropriate.  These issues are common to
28

1  every members of the class and predominate over any individual questions."

2  (Pl.'s Mot. Class Cert., 14, Doc. 85.)  Plaintiff also argues Harley's computer system identifies the

3  putative class members, the amount of the alleged deficiency, and any amount paid toward the

4  deficiency.  Thus, even if the amount of restitution due to each members is different, it is

5  ascertainable from Harley's records (Pl.'s Mot. Class Cert., 13-14, Doc. 85.)

6       Harley argues predominance is not met, reiterating the distinction between borrowers who

7  voluntarily surrendered their motorcycle - like Plaintiff, who did not actually incur a repossession fee

8  - and those who had their motorcycle repossessed, and properly incurred a repossession fee.

9  (Harley's Opp., 21, Doc. 92.)  This distinction, Harley argues, coupled with its defense of substantial

10  compliance with Rees-Levering, will require individualized factual inquiries which would

11  predominate over common issues. (Harley's Opp., 21, Doc. 92.).  Harley also argues that, in October

12  of 2007, ESB included an arbitration clause and class action waiver in its loan documents.  (Harley's

13  Opp., 15, Doc. 92.)  Because of this, Harley argues that some of the absent class members have

14  waived their right to participate in this class action, defeating the predominance inquiry.  (Harley's

15  Opp., 15, Doc. 92.)

16       **a.**      **Common Issues Predominate With Respect to the Liability Predicated on**

17            **Harley's NOI**

18       Harley argues Judge Wanger's Order found the NOI failed to comply with Section 2983.3

19  merely because the $600.00 estimated repossession fee was unreasonable.  (Harley's Opp., 11, Doc.

20  92.)  To the contrary, the Court reads Judge Wanger's Order as stating that Harley was required to

21  provide the *specific* amount of repossession fee.  *See,* Doc. 72, 7: 22-28 ("It is undisputed that the

22  NOI [Harley] sent to Plaintiff did not contain the actual amounts Plaintiff owed for repossession fees

23  or law enforcement fees . . . Accordingly, [Harley's] NOI was deficient in material respects, as it

24  failed to state the amounts due . . .); *See also,* Doc. 72, 11: 14-15 ("[Harley's NOI failed to include

25  the correct amount of repossession fees owed . . .")   Judge Wanger *also* found, "assuming arguendo

26  that, in some rare situations, [where] estimates of repossession costs may be sufficient to comply

27  with section 2983.2(a)(2)," because Plaintiff's Motorcycle was never repossessed, "[Harley]" should

28  have known that the NOI did not provide a reasonable estimate." (Doc. 72, 10: 13-14, 11: 7-8.)  As

such, even assuming the "reasonableness" of a repossession estimate entails a rigorous

individualized inquiry, Harley's liability can be predicated on its failure to provide a specific amount

of repossession fee, without any inquiry into the reasonableness of the estimate.

Moreover, Judge Wanger did not predicate his finding that the NOI was deficient merely

because of the repossession fee stated therein.  Rather, Judge Wanger also determined that Harley's

failure to include the identity and contact information for the repossessing entity also violated Rees-

Levering.  *See,* Doc. 72, 7: 24-28 ("It is also beyond dispute that [Harley's] NOI did not provide

Plaintiff notice of the parties to whom such repossession and law enforcement fees were due . . .

Accordingly, [Harley's] NOI was deficient in material respects, as it failed to state the amounts due,

to whom they were due, and the address and/or contact information for those parties."); *See also,*

Doc. 72, 11: 14-19 ("[Harley's NOI . . . failed to identify the third parties to whom such fees were

owed, and failed to provide contact information [for] such third parties; all of this information is

required by section 2983.2(a)(2).")   Either of these failures, by themselves, render the NOI

insufficient, and create liability under Rees-Levering.  The evidence before the Court demonstrates

these omissions effected Plaintiff and the Class equally.

The predominant issues in this case include the following: (1) whether Rees-Levering applies

to Harley; (2) whether strict compliance, or substantial compliance with Rees-Levering is required;

(3) whether the NOIs strictly complied with Rees-Levering, and (4) whether, despite Harley's failure

to include a specific amount of repossession fee, as well as the identity and contact information for

the repossessing agency, Harley's NOI substantially complied with Rees-Levering.  Each of these

issues present a common question, capable of generating common answers, apt to drive the

resolution of Plaintiff's claims for the Class as a whole.

> **b.**     **The Presence of An Arbitration Clause in *Some* of the Class Members**
>
> **Loan Documents Does Not Create a Predominance of Individual Issues**

Rule 23 does not require that class certification be denied when a defendant may be able to

assert unique defenses against putative class members. *Cameron v. E.M. Adams, & Co.,* 547 F.2d

473, 478 (9th Cir. 1976) ("the presence of individualized issues of compliance with the statute of

limitations here does not defeat the predominance of the common questions."); *Herrera v. LCS Fin. Serv. Corp.*, 274 F.R.D. 666, 681 (N.D.Cal. 2011 ) (the fact that some members of a putative class have released claims against a defendant does not bar class certification.)

Harley argues that, "beginning in October 2007, ESB included an arbitration clause and class action waiver [in its loan documents.]" (Harley's Opp., 15: 13-14, Doc. 92.)  As such, "borrowers who entered into ESB loans after October 2007 cannot be included in the putative class Plaintiff seeks to represent." (Harley's Opp., 15: 25-27, Doc. 92.)  In support, Harley offers an October 2007 revised version of the subject Note, which ESB entered into with borrowers.  Plaintiff responds that Harley has not offered any evidence to support the use and enforceability of the arbitration agreements, and that the "mere possibility that an unnamed class member may be subject to an arbitration clause does not defeat class certification."  (Pl.'s Reply, 6:-7, Doc. 100.)

The possibility that Harley may seek to enforce agreements to arbitrate with some of the putative Class members does not defeat class certification.  Plaintiff has met the requirements of Rule 23(a), and plead a *prima facie* case for violations of Rees-Levering and the UCL.  Discussed above, *supra* Section IV.B.1.a., the predominant issues in this case involve common questions, capable of generating common answers, apt to drive the resolution of Plaintiff's claims for the Class as a whole.  Plaintiff's burden at class certification does not require him to demonstrate Harley lacks any individual defense to every Class member.  The possibility that Harley may seek to compel arbitration against individual Class members does not predominate over the many common issues necessary to determine Harley's liability to the Class.

Moreover, Harley has not presented any evidence to support the existence of valid, enforceable arbitration agreements with any putative Class members.  The evidence offered by Harley consists of a single blank ESB loan agreement, which contains a pre-dispute mandatory arbitration agreement and class action waiver.  There is no evidence that this loan agreement was used with any putative Class member, other than the declaration of Tom Fleming, which states: "[e]ffective October 2007, ESB revised the form of Promissory Note and Security Instrument ("Note") it entered into with borrowers." (Fleming Docl., ¶ 34, Doc. 94.)  There is no evidence,

however, that ESB provided the retail financing to putative Class members once this revised Note came into effect.  For instance, Harley's pleading acknowledges that other Harley affiliates, i.e., Harley Davidson Financial Services, Inc., also provides retail financing.  (Harley's Opp., 3: 12-14, Doc. 92.)  There is no evidence presently before the Court that a single putative Class member has waived their right to participate in representative proceedings and submit their individual claims to arbitration. The Federal Arbitration Act ("FAA") "does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation, and enforcement of contracts generally." *Ramirez-Baker v. Beazer Homes, Inc.,* 636 F. Supp. 2d 1008, 1015 (E.D. Cal. 2008), quoting *Cione v. Foresters Equity Servs.*, 58 Cal. App. 4th 625, 634, 68 Cal. Rptr. 2d 167 (1997).

Courts have likewise held the presence of agreements to arbitrate with some of the unnamed Class members does not defeat class certification.  *See, e.g., David v. Four Seasons Hotel Ltd.,* 2011 WL 4590393 (Sept. 30, 2011 D. Hawaii) (granting class certification, stating that "[t]he possibility that Four Seasons may be able to compel unnamed members of the putative class to arbitrate in the future does not preclude class certification.");  *Herrera v. LCS Fin. Serv. Corp.*, 274 F.R.D. 666, 681 (N.D.Cal. 2011) ("The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification."); *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2011 WL 1753784 (N.D. Cal., May 9, 2011) (denying a motion to stay due to the presence of arbitration agreements with some of the unnamed class members, ultimately concluding that, after the class was certified, the defendant was required to submit an "omnibus motion to compel arbitration for each plaintiff listed."); *See also Midland Funding, LLC v. Brent*, 2010 WL 4628593, at *4 (N.D. Ohio 2010) (rejecting the argument that the presence of an arbitration agreement with some of the unnamed class members barred certification, stating that "[a]ny arbitration related defenses that Midland and MCM have to claims of certain class members may be dealt with pursuant to Fed. R. Civ. P. 23 at a later stage in the litigation, through the creation of subclasses, or by eliminating some members of the class.")

1    Harley cites two California cases in support of its argument that individualized

2  determinations of Class members who have agreed to arbitration predominates over common issues:

3  *Pabli v. Servicemaster Global Holdings, Inc.,* 2011 WL 3476473, No. cv-08-03894 (N.D. Cal. Aug.

4  9 2011), and *Estrella v. Freedom Financial Network, LLC,* 2012 WL 214856, No. Cv-09-03156

5  (N.D. Cal. Jan. 24, 2012)  The cases cited by Harley are distinguishable.

6    In *Estrella,* the court decertified a class and compelled arbitration after the United States

7  Supreme Court's decision in *AT&T Mobility v. Concepcion,*  - - - U.S.  - - -, 131 S. Ct. 1740 (2011).

8  *Estrella*, 2012 WL 214856 *at 4-6.  *Estrella's* decision was based on the fact that the *named* class

9  representatives contractually were obligated to arbitrate their claims.  *Estrella*, 2012 WL 214856 *at

10  5.  The named representatives in *Estrella* could no longer meet Rule 23's requirements, because they

11  had personally waived their right to a judicial forum, as well as the right to participate in a

12  representative proceeding.  *Estrella*, 2012 WL 214856 *at 5.  This is not the case here.  Plaintiff has

13  not entered into a written arbitration agreement.  Harley's arguments are directed at *some* of the

14  *unnamed* Class members, but not the named Plaintiff himself.  Indeed, the evidence before the Court

15  demonstrates Plaintiff's' claims are not subject to arbitration.

16    In *Pabli,* the other case cited by Harley, the court denied a renewed motion for class

17  certification.  *Pabli,* 2011 WL 3476473 *at * 3.  The *Pabli* court based its decision on evidence of

18  numerous arbitration agreements signed by putative class members, which supported its finding that

19  a class action was not a superior method to litigate those claims.  *Pabli,* 2011 WL 3476473 *at * 2.

20  *Pabli,* however, did not rely on any authority for the proposition that the presence of arbitration

21  agreements in some unnamed class members' contracts precluded certification.  Rather, *Pabli* cited

22  the "unique circumstances of this litigation," the complexity of the plaintiff's legal claims, and the

23  fact that "the evidence before the court supports an inference that a significant number" of unnamed

24  class members were bound to arbitration agreements.  *Pabli,* 2011 WL 3476473 at * 2-3.

25    None of the concerns presented in *Pabli* are present here.  There is no evidence before the

26  Court to support an inference that a significant number of unnamed class members agreed to

27  arbitration.  Indeed, there is no evidence before the Court that *any* putative Class member is bound to

28

arbitrate their claims with Harley.  Rather, the arguments and evidence proffered by Harley ask this Court to infer that such agreements exist.

While it is possible certain Class members may be later excluded based on an agreement to participate in arbitration, this does not defeat the predominance inquiry.  It is not Plaintiff's, nor the putative class members' burden, to demonstrate they *have not* waived the right to participate in these proceedings.  Harley's claimed intent to establish a contractual defense to the statutory claims of some of the putative Class members does not make individual fact questions, rather than the substantial common issues discussed above, predominate.

### c.   Harley Has Not Waived Its Right To Compel Arbitration Against Unnamed Class Members

Plaintiff argues that Harley has waived any right to seek arbitration against unnamed Class members.  The Federal Arbitration Act favors the enforcement of private arbitration agreements. *See* 9 U.S.C. § 2.  Nonetheless, courts may refuse to enforce an arbitration agreement on the ground that the party seeking enforcement has waived any such right. *Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 758–59 (9th Cir. 1988).  "A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir.1990). "The party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir.1986)); *see also Van Ness*, 862 F.2d at 758–59 ("Waiver of the right to arbitration is disfavored because it is a contractual right.").

Harley has not waived its right to seek arbitration.  Harley does not claim a right to arbitration with respect to Plaintiff's claims.  Rather, Harley claims a right to arbitrate the claims of some of the unnamed Class members.  However, until a class is certified and the opt-out period has expired, unnamed Class members are not parties to this action, and their claims are not at issue. *See Saleh v. Titan Corp.,* 353 F. Supp.2d 1087, 1091 (S.D. Cal. 2004) (the court does not have jurisdiction over the putative plaintiffs as it does the named plaintiffs).  Accordingly, Harley does not have a right to

22

compel arbitration against unnamed Class members prior to class certification.  *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2011 WL 1753784 (N.D. Cal., May 9, 2011) ("It does not appear to the Court that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification.'")[8]

### 2.     Superiority

The superiority requirement tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." *Zinser,* 253 F.3d at 1192.  Rule 23(b)(3) specifies four nonexclusive factors that are "pertinent" to a determination of whether class certification is the superior method: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, there is no evidence to indicate Class members have shown interest in individually controlling separate actions against Harley, and it is unlikely there will be any difficulties in managing this case as a class action.  Harley argues superiority is not met, again arguing that the

---

[8] The existence of an arbitration agreement does not defeat class certification, but post-certification procedures are not the subject of controlling authority. There is no Ninth Circuit authority regarding the procedure a defendant must follow to compel arbitration against an unnamed class member of a certified class.  The Court, however, finds a recent case from the Northern District of California persuasive.  In  *In re TFT-LCD (Flat Panel) Antitrust Litigation*, the Northern District, after finding a right to compel arbitration against unnamed class members did not exist until the class was certified, laid out the following procedure for post-certification motions to compel arbitration for unnamed class members: "as an initial step, defendants must locate and identify every arbitration agreement that they intend to assert against unnamed members of the DPP class. Defendants are ordered to produce a comprehensive list of class members against which defendants will move to compel arbitration ("Arbitration List"). That list shall identify, by bates number, the specific contract that will form the basis of defendants' motion. . . defendants shall file (if they desire) an omnibus motion to compel arbitration regarding each plaintiff listed. In connection with their motion, defendants shall file and serve both the Arbitration List and copies of the individual contracts. The failure to include an arbitration agreement in the aforementioned motion shall constitute waiver of the right to arbitrate the claims asserted on behalf of the DPP class."  *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2011 WL 1753784 (N.D. Cal. 2011.)

1   reasonableness of the repossession fee must be individually determined for each Class member.

2   Based on the common legal and factual issues, however, the Court finds it would be more efficient to

3   litigate this case on a class-wide basis rather than have each member of the Class litigate their claim

4   individually.  Accordingly, the Court finds the superiority requirement has been met.

5   **C.      Ascertainability**

6          Both parties have acknowledged that in addition to the express requirements of Rule 23, there

7   is an implied requirement that the proposed classes be ascertainable.  "An implied prerequisite to

8   certification is that the class must be sufficiently definite."  *Mazur v. ebay Inc.,* 257 F.R.D. 563 (N.D.

9   Cal. 2009).

10         Plaintiff argues that the Class is ascertainable because the proposed Class definition is

11  tailored to ensure that only those who have been victims of Harley's unlawful NOI practices during

12  the relevant period are included.  Moreover, Plaintiff argues and has put forward evidence indicating

13  that the identity of the proposed Class members, as well as any possible damages such Class

14  members may suffered, are readily identifiable through Harley's computer records.  Harley makes no

15  meaningful opposition to this requirement.

16         The Court agrees with Plaintiff.  The evidence before the Court indicates that the identity of

17  the proposed Class members, and any restitution damages they may be entitled to, is easily

18  identifiable through Harley's records.  Additionally, the proposed Class definition is properly

19  tailored to the conduct alleged in Plaintiff's Complaint.

**CONCLUSION AND RECOMMENDATIONS**

21         Having considered the moving, opposition and reply papers, the declarations and exhibits

22  attached thereto, arguments presented at the March 30, 2012 hearing, as well as the Court's file, the

23  Court RECOMMENDS as follows:

24         (1) Plaintiffs' Motion for Class Certification be GRANTED.  The Court recommends the

25  following class be certified: All persons who purchased a motor vehicle in California that was

26  subject to California's Rees-Levering Automobile Sales Finance Act, Cal. Civil Code § 2981, *et*

27  *seq.*, whose vehicle was repossessed or voluntarily surrendered to Harley-Davidson Credit

28

1   Corporation, or its agents, and to whom Harley-Davidson Credit Corporation sent a notice of intent

2   to dispose of repossessed collateral since August 19, 2004, and against whom Harley-Davidson

3   Credit Corporation claimed a deficiency was owed;

4           (2) Luis Manual Mora be appointed as Class representative;

5           (3) The law firm of Kemnizter, Barron & Krieg, LLP be appointed as Class counsel.

6       These findings and recommendations are submitted to the district judge assigned to this

7   action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local

8   Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written

9   objections to these findings and recommendations with the Court and serve a copy on all parties.

10  Such a document should be captioned "Objections to Magistrate Judge's Findings and

11  Recommendations."  The district judge will review the magistrate judge's findings and

12  recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).

13      The parties are advised that failure to file objections within the specified time may waive the

14  right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

15          IT IS SO ORDERED.

16  **Dated:    April 6, 2012              /s/ Barbara A. McAuliffe**

17                                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

25